# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| SALIM O. ALNABER, | No. ED CV 17-1941-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| NANCY BERRYHILL, DEPUTY COMMISSIONER OF OPERATIONS FOR THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I.
## PROCEEDINGS

Plaintiff filed this action on September 25, 2017, seeking review of the Commissioner's[1] denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before a Magistrate Judge on

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.

October 16, 2017, and November 6, 2017. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on July 18, 2018, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born on January 14, 1956. [Administrative Record ("AR") at 187, 194.] He has past relevant work experience as a caterer and as a car rental manager. [AR at 27, 53.]

On November 8, 2013, plaintiff filed an application for a period of disability and DIB, and an application for SSI payments, alleging that he has been unable to work since April 15, 2011. [AR at 187-92, 194-215.] After his applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 128.] A hearing was held on May 4, 2016, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 33-55.] A medical expert ("ME") and a vocational expert ("VE") also testified. [AR at 35-42, 52-54.] On June 23, 2016, the ALJ issued a decision concluding that plaintiff was not under a disability from April 15, 2011, the alleged onset date, through June 23, 2016, the date of the decision. [AR at 17-28.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 185.] When the Appeals Council denied plaintiff's request for review on August 15, 2017 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622

F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.  THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in

substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 15, 2011, the alleged onset date.[2] [AR at 19.] At step two, the ALJ concluded that plaintiff

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. [AR at 19.]

4

has the severe impairments of coronary artery disease, status post multilevel angioplasty and stenting; diabetes mellitus; and multilevel degenerative disc disease of the cervical spine and lumbar spine. [AR at 20.] As relevant here, the ALJ also found that plaintiff's left patellofemoral syndrome of the left knee "did not cause more than minimal limitation in [plaintiff's] ability to perform work activities" and, therefore, was nonsevere. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 21.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[4] as follows:

> [Can] occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; occasionally climb stairs, bend, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes or scaffolds; and precluded from concentrated exposure to unprotected heights, dangerous or fast-moving machinery, and temperature extremes.

[AR at 22.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform his past relevant work as a caterer and as a car rental manager. [AR at 27, 53-54.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of April 15, 2011, through June 23, 2016, the date of the decision. [AR at 28.]

/

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

# V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when she failed to properly consider plaintiff's impairments in existence as of the date of the decision. [JS at 4.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

### A. LEGAL STANDARD

At step two of the five-step process, plaintiff has the burden to provide evidence of a medically determinable physical or mental impairment that is severe and that has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20 C.F.R. §§ 404.1508 (effective through March 26, 2017), 404.1509, 404.1520(a)(4)(ii); see generally Bowen v. Yuckert, 482 U.S. 137, 148, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (Secretary may deny Social Security disability benefits at step two if claimant does not present evidence of a "medically severe impairment"). This must be "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508 (effective through March 26, 2017). The Commissioner's regulations define "symptoms" as a claimant's own description of her physical or mental impairment. 20 C.F.R. § 404.1528 (effective through March 26, 2017). "Signs," by contrast, "are anatomical, physiological, or psychological abnormalities which can be observed, apart from [the claimant's] statements . . . [,] [and] must be shown by medically acceptable clinical diagnostic techniques." Id. Finally, "[l]aboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." Id. A claimant's statements about an impairment (i.e., "symptoms") "are not enough [by themselves] to establish that there is a physical or mental impairment." Id.

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work

activities. 20 C.F.R. § 404.1520. An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities. Yuckert, 482 U.S. at 153-54 & n.11 (Social Security claimants must make "de minimis" showing that impairment interferes with ability to engage in basic work activities) (citations omitted); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005); see also 20 C.F.R. § 404.1521(a). "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . ." 20 C.F.R. § 404.1521(b). It also includes mental functions such as the ability to understand, carry out, and remember simple instructions, deal with changes in a routine work setting, use judgment, and respond appropriately to supervisors, coworkers, and usual work situations. See SSR 85-28.

When reviewing an ALJ's findings at step two, the Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." Webb, 433 F.3d at 687 (citing Yuckert, 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

**B.  ANALYSIS**

Plaintiff contends that the ALJ failed to properly consider his left knee impairments as a result of a car accident in November 2015, as well as neuropathy of both his feet and hands as a result of his long-standing diabetes, and his bilateral carpal tunnel syndrome  [JS at 5.] Specifically, he submits that although the ALJ acknowledged and summarized these conditions, neither the ALJ nor the ME considered whether these symptoms and their "attendant limitations 'can be *expected* to last for a continuous period of not less than 12 months.'" [JS at 5-6 (citing 42 U.S.C. §§ 416(i)(1)) (emphasis added).] Plaintiff argues that these conditions "were not transitory and likely to dissipate especially the neuropathy." [JS at 6.] He further argues that the ALJ and

the ME treated the durational requirement "as a purely retrospective inquiry," and instead should have determined "whether the injuries sustained in November 2015 or the neuropathy [and carpal tunnel syndrome] that arose in 2015 were . . . *expected* to last for at least 12 continuous months." [JS at 9 (emphasis added).] Because the hearing was held on June 23, 2016, less than one year after plaintiff's November 2015 accident and his diagnoses with neuropathy and carpal tunnel syndrome, plaintiff suggests that the ALJ's failure to address these issues and requiring him to instead "reopen[] [his case] should one or more conditions last to November 2016," would be prejudicial to plaintiff. [JS at 6.] Plaintiff instead requests that the matter be reversed and remanded with instructions "to reach the issue of the durational requirements of the sequelae of the November 2015 accident, the diabetic neuropathy, and the bilateral carpal tunnel syndrome." [Id.]

Defendant responds that plaintiff failed to present any evidence that these conditions caused him specific work-related limitations, let alone that they "would render him unable to perform the range of light work found by the ALJ." [JS at 8.] Defendant notes that on April 28, 2016, Dr. Uddin, a neurological consultative examiner, conducted an examination and determined that plaintiff's strength was symmetrical and he had no atrophy of his hand muscles. [Id. (citing AR at 809-10).] Defendant points out that although Dr. Uddin suggested plaintiff needed to control his blood sugar, he did not note any functional limitations. [JS at 8-9.] Defendant suggests that the ALJ "fully considered Plaintiff's alleged peripheral neuropathy and carpal tunnel syndrome and reasonably concluded that . . . Plaintiff did not have any additional limitations due to these conditions." [JS at 9 (citing AR at 25-26).]

It is true that the ALJ reviewed and summarized plaintiff's post-accident records. For instance, she reported that x-rays of plaintiff's left knee in December 2015 "showed there was faint radiolucent change in the posterior patella measuring up to 5 mm in size, suspicious for patellar chondromalacia." [AR at 25 (citing AR at 736).] She also noted that in March 2016, plaintiff presented to Arrowhead Orthopedics complaining of pain and swelling in his left knee that was relieved by elevation and medication and exacerbated by movement and applied pressure. [AR at 25 (citing AR at 798).] A March 1, 2016, MRI of plaintiff's left knee "revealed intrasubstance

1 degeneration in the posterior horn of the lateral meniscus (a small superiorly surfacing tear could
2 not be excluded); intrasubstance degeneration in the posterior horn of the medial meniscus with
3 no definite surfacing meniscal tear seen; and focal denudation of articular cartilage over the patella
4 apex." [Id. (citing AR at 798).] On March 30, 2016, based on the December 2015 x-rays and the
5 March 1, 2016, MRI, Barry S. Grames, M.D., an orthopedic surgeon, diagnosed plaintiff with "left
6 anterior contusion, patellofemoral syndrome of the left knee, possible small medial meniscus tear,
7 and degenerative arthritis of the left knee." (Id. (citing AR at 796-98).] The ALJ found plaintiff's
8 patellofemoral syndrome of the left knee to be nonsevere as it did not cause more than minimal
9 limitation in his ability to perform work activities. [AR at 20 (citing AR at 796).] However, other
10 than noting that treatment notes after the accident "did not document any further problems to
11 support that this condition has lasted or can be expected to last for a continuous period of not less
12 than 12 months," the ALJ did not specifically address any of the other MRI findings.

With respect to plaintiff's left knee problems, neuropathy, and carpal tunnel syndrome, the ME testified during the hearing as follows:

> [ME:] Now, he's had another motor vehicle accident in November of '15. And he's seeing orthopedics again. At [AR at 794], gives us an example of his most recent note, it's dated March [3]0, 2016, last ortho note. The feeling with his cervical spine, he has degenerative disease of the cervical spine which seems to have occurred since the auto accident of November. And they're dealing with his left knee. And both of these had MRIs. I'm having some difficulty actually interpreting what they're thinking about. . . . The knee, it's not clear, if something has to be done. It looks to me as if the MRI findings are rather non-specific. And that the knee is stable. And he can bear weight with it. Should probably respond to conservative measures. And finally, there's one discussion about a possible carpal tunnel syndrome, or an ENG, but that really hasn't been fully developed. And I don't have any follow up notes with that. I would have to mention that the cervical spine and the knee and the carpal tunnel, all seem to be relatively acute i.e. starting from the auto accident in/around November '15.
>
> . . . .
>
> [ME:] . . . Avoiding ladders, ropes and scaffolds, that's a combination of the diabetic neuropathy and his low back. . . . At that time [when the Agency reviewers reviewed the record in 2014], there's no discussion of any carpel [sic] tunnel issue, so there are no manipulative limitations. . . .
>
> . . . .
>
> [ME:] Well, the last categories I've mentioned, seemed to have started out with the most recent motor vehicle accident in November of '15.

| | |
|---|---|
|1| [ALJ:] Correct.|
|2| [ME:] Involving his left knee and his cervical spine.|
|3,4| [ALJ:] Right. And so, we have an onset date with that, you said in November '15, which was less than a year ago. So, we have a durational issue there. But I will address that at a later time. Okay?|
|5| [ME:] Yeah.|
|6,7| [ALJ:] Hasn't gone on long enough to change your RFC. So, that your assessment or your limitations would apply through the present time, providing that the motor vehicle accident injuries don't last a year, correct?|
|8| [ME:] Correct.|

[AR at 38-42.] Thus, although it appears the ME took plaintiff's diabetic neuropathy into account when he stated plaintiff should avoid climbing ladders, ropes, and scaffolds, he declined to, and/or was specifically instructed not to, consider plaintiff's left knee problems and carpal tunnel syndrome in formulating his RFC, because it had not yet been determined whether those injuries would last a year. [AR at 42.]

With respect to plaintiff's neuropathy and bilateral carpal tunnel syndrome, the ALJ stated the following:

> Since November 2015, he had been feeling numbness in the feet and sometimes there was a sharp prickly pain. There was numbness in both the upper extremities. It was the tip of the fingers which was involved. . . . On neurological examination, strength was symmetrical. Deep tendon reflexes were hypoactive. Tinel's and Phalen's signs were positive on the right side. There was no atrophy of the hand muscles. There was diminished pinprick sensation up to the upper one third. He was diagnosed with bilateral carpal tunnel syndrome and diabetic peripheral neuropathy. Lower extremity venous mapping ultrasound showed no evidence of deep vein thrombosis; valvular incompetence of the greater saphenous vein bilateral; no valvular incompetence of the short saphenous vein bilateral; no valvular incompetence of perforator veins bilateral; deep reflux noted in the left common femoral vein; and meets medical criteria for venous ablation.

[AR at 26 (citing AR at 808, 809-10).] The ALJ made no mention elsewhere in the decision as to her consideration of these findings and issues, including whether they could be expected to last more than twelve months, or could be considered severe or nonsevere.

As noted by the ALJ, Dr. Uddin's April 28, 2016, neurological report contained a number of positive neurological findings: hypoactive deep tendon reflexes; diminished pinprick sensation; and positive Tinel's and Phalen's signs on the right side. [AR at 809.] Additionally, as also noted

by the ALJ, the April 22, 2016, lower extremity venous mapping ultrasound reflected valvular incompetence of the greater saphenous vein "from the distal-thigh to the distal calf," "[d]eep reflux" was noted in the left common femoral vein, and plaintiff was a candidate for venous ablation. [AR at 808.] Dr. Uddin's treatment note indicated that he was going to authorize an EMG and nerve conduction study "of the bilateral median motor and sensory orthodromic nerves and peripheral nerves in one of the lower extremities." [AR at 810.] While -- as defendant points out -- Dr. Uddin also commented that "[o]ne of the most important things is a good control of the blood sugar," he qualified this by stating that doing so "will slow down" the *progression* of plaintiff's diabetic neuropathy. [Id.] Dr. Uddin's comment and his authorization for additional testing imply, therefore, that plaintiff's neuropathy and carpal tunnel issues would not be reversed, but were expected to continue to worsen into the indefinite future. Additionally, in light of Dr. Uddin's determination to request authorization for additional testing, it is reasonable to assume that at the time of the hearing just a few days later, such authorization either had not yet been received or, if it had been received, plaintiff had not yet undergone an appointment for the additional testing. It was not reasonable for the ALJ to assume – as she apparently did here – that a lack of treatment notes between Dr. Uddin's report on April 28, 2016, which recommended additional testing, and the hearing a few days later on May 4, 2016, was an indication that these conditions were not going to continue for at least a twelve-month period. [See AR at 20 (stating that the post-accident treatment notes did not document that these problems were expected to last for a twelve-month period).]

As noted, plaintiff's burden at step two is de minimis. Based on the foregoing, the Court finds that plaintiff met his step two burden of providing evidence "consisting of signs, symptoms, and laboratory findings," of medically determinable physical impairments of knee problems (including, but not limited to patellofemoral syndrome), peripheral neuropathy in the upper and lower extremities, and bilateral carpal tunnel syndrome, one or more of which might be expected to have continued past November 2016, and one or more of which might have an impact on the ALJ's RFC determination. Even if true that if this Court declines to remand the matter, and if plaintiff has obtained additional evidence that these conditions continued past November 2016 he

could then simply move to re-open this action, the Court finds it will be a more efficient use of resources to grant plaintiff's request and remand this matter for a durational and severity determination of plaintiff's left knee problems, peripheral neuropathy, and carpal tunnel syndrome.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ shall allow plaintiff to supplement the record with any new medical evidence relating to his left knee problems, carpal tunnel syndrome, and peripheral neuropathy. Second, if the ALJ determines it is warranted, the ALJ shall order a consultative examination or examinations, with the appropriate specialist(s) being provided with all of plaintiff's medical records. Third, the ALJ shall reassess the entire medical record, including, if applicable, the new consultative examination(s), and all other medical evidence of record relevant to plaintiff's claim that his knee problems, carpal tunnel syndrome, and/or peripheral neuropathy are severe impairments that meet or met the durational requirement for lasting twelve continuous months since at least November 2015. If warranted, the ALJ may request the services of a medical expert. The ALJ must then explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Fourth, the ALJ

shall reassess plaintiff's subjective symptom testimony and provide specific, clear and convincing reasons for discrediting his testimony, if warranted. Fifth, based on her reevaluation of the entire medical record, and plaintiff's subjective symptom testimony, the ALJ shall determine plaintiff's RFC. Finally, the ALJ shall proceed through step four and, if warranted, step five to determine, with the assistance of a VE if necessary, whether plaintiff can perform his past relevant work or any other work existing in significant numbers in the regional and national economies. See <u>Shaibi v. Berryhill</u>, 870 F.3d 874, 882-83 (9th Cir. 2017).

## VII.
## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 23, 2018

*Paul L. Abrams*
_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE